IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH COATES, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-13-1631 |
| KATHLEEN GREEN, *et al.*, | * | |
| Respondents. | * | |

\*\*\*

## MEMORANDUM OPINION

Joseph Coates filed a habeas petition, claiming ineffective assistance of counsel and denial of a fair trial with regard to the state court proceeding in which he was found guilty of first degree attempted murder, assault, and handgun offenses. Upon review of the substantive response (ECF No. 8), this Court finds a hearing in this case unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Petition for Writ of Habeas Corpus shall be denied and a Certificate of Appealability declined.

### Facts Produced at Trial

Petitioner Joseph Coates ("Coates") was tried before a jury in the Circuit Court for Baltimore City on December 8–10, 2008, on charges of attempted first degree murder and related handgun offenses for the August 24, 2007 shooting of James Hammond. At trial, the State's eye witness Troy Wilson testified that at approximately 10:20 p.m. on the evening of August 24, 2007, more than a dozen people were standing outside near a street when a black Lincoln Navigator pulled up and stopped. *See* Dec. 8, 2008 Tr. 144 – 156, Resp. Ex. 3 (in court file). Wilson testified that a man, whom he later identified as Coates, got out of the Navigator and shot

at James Hammond three times, striking him twice. *See id.*

Sergeant Lloyd Wells of the Baltimore City Police testified that he arrived on the scene, conducted an "area canvass," and discovered shell casings of an unknown caliber that were in good condition. Wells testified that had the casings not been in good condition, e.g., had they been rusty, there would be no reason to believe they were the product of a very recent shooting. *See* Dec. 8, 2008 Tr. 175–218. A firearms examiner with the Baltimore City Police, Christopher Faber, testified that the shell casings were .45 caliber, had all been fired by the same firearm, and, because they had been ejected to the ground, had been fired by a semiautomatic firearm. Dec. 9, 2008 Tr. 15–23 (testimony of Faber), Resp. Ex. 4 (in court file).

Although police arrived on the scene shortly after the shooting occurred, no one interviewed at that time offered a description of the shooter; rather, they maintained they had not been present when Hammond was shot. *See* Dec. 8, 2008 Tr. 184–85. Troy Wilson was not interviewed that evening because he left the scene and went into his house, which was nearby. Wilson explained that he went back inside because the shooting had nothing to do with him. *See id.* at 149–50, 165.

Wells testified that he went to Johns Hopkins to check on the status of the victim and when he arrived, Hammond was in surgery. He said that he later was able to interview Hammond at the hospital, but when he returned for a second interview, he learned that Hammond had been released from the hospital. Wells did not testify about his interview of Hammond, and Hammond did not testify at trial; thus, no motive for the shooting was ever established. *See id.* at 185–86, 190–91.

Wilson testified that, on the morning of August 26, 2007, at approximately 10:00, he and a man he referred to as "Frog" were about to drive to a store to purchase alcohol when the same

2

Lincoln Navigator Wilson he had seen two nights previously pulled up to his car, blocking Wilson from leaving. The passenger in the Navigator then brandished a firearm and shot at Wilson's truck.[1] Wilson identified the driver as the same man who had shot Hammond. *Id.* at 150–52.

When Wilson initially spoke with police he provided a description of the car, which he maintained was used during both incidents, and a description of the shooter, whom he described as a "[l]ittle chubby fat boy with plats" in his hair and "brown skin." *Id.* at 152, 166. Wilson described the Navigator as black with "silver skirts" and bearing Maryland agricultural tags. *Id.* at 151–52. Police were able to locate a black Lincoln Navigator with agricultural tags registered to Coates, who matched the general description of the shooter. *See id.* at 187–89. Later, Wilson identified Coates's picture in a photo array on September 24, 2007, writing on the back of the form: "This is the guy I seen get out of the truck doing the shooting that night. And this is the same guy firing the gun . . . the same guy driving the same Navigator Sunday morning when he shot my wife's truck up." *Id.* at 153–54.

Coates's trial counsel called two witnesses to the stand who were also present during the shooting on August 24, 2007. Each gave slightly different accounts of the shooting and both maintained the shooter did not exit the car, but simply shot Hammond through an open car window. Both witnesses admitted they lied to police when they were questioned about being present at the scene of the shooting and neither confirmed that Wilson was present at the time Hammond was shot. Dec. 9, 2008 Tr. 65–101.

Also testifying for the defense was Coates's girlfriend, Tyra Richmond. She testified that Coates's Navigator had recently been released from the city's impound lot and, through her

---

[1] Initially, Coates was criminally charged in the August 26, 2007 shooting, but the charges were later "nolle prossed."

testimony, pictures of the car were introduced into evidence. Richmond testified that the Navigator looked the same way it did at the time of the shooting. The photographed Navigator was black with silver hubcaps and a dark grey running board; Richmond did not mention silver wheel liners, or "skirts," in her testimony. *Id.* at 111–16.

Coates's defense counsel attempted to call a witness, Damien Tapp,[2] to testify that he owned a body shop where Coates's Navigator had undergone repairs, including a paint job that changed the color of the truck from green to black. The defense counsel stated that Tapp's testimony was not an alibi defense, but would be limited only to the color of Coates's car to establish that, at the time of the shooting, it was green. Dec. 10, 2008 Tr. 3–12, Resp. Ex. 5 (in court file). The State's Attorney objected to Tapp being allowed to testify, as the State was not notified he would be a witness in a timely manner, as required by Maryland Rule 4-263. The State's objection was sustained and Tapp was not permitted to testify. *Id.* at 12.

The jury returned a verdict of guilty on December 10, 2008 on first degree attempted murder, assault, and handgun offenses. *Id.* at 66–67. On January 26, 2009, Coates was sentenced to serve a term of incarceration, totaling 40 years. Jan. 26, 2009 Tr., Resp. Ex. 6 (in court file).

<u>Claims Raised in State Court</u>

Coates filed a direct appeal with the Court of Special Appeals of Maryland raising three grounds for relief:

1. Did the trial court abuse its discretion when it refused to ask whether members of the venire who responded to the hardship question could be fair and impartial?

2. Did the trial court err when it permitted the State to introduce other crimes evidence, which consisted of testimony that Mr. Coates was involved in a shooting that occurred two days after the shooting for which Mr. Coates

---

[2] Mr. Tapp is incorrectly referenced as "Taft" in the transcript.

was on trial?

3. Was the evidence insufficient to support Mr. Coates' convictions for wearing and carrying a handgun, use of a handgun in the commission of a crime of violence, and illegal possession of a regulated firearm?

Br. of Appellant 2 (Md. Ct. Spec. App.), Resp. Ex. 7 (in court file). The Court of Special Appeals issued an unreported opinion on July 14, 2010, denying relief and affirming Coates's convictions. Resp. Ex. 9 (in court file). Coates did not seek certiorari from the Maryland Court of Appeals.

Coates filed a petition for post-conviction relief on April 18, 2011.[3] Second Supp. Pet. for Post-Conviction Relief, Resp. Ex. 10 (in court file). In that petition, Coates raised the following claims:

1. [T]rial counsel was ineffective for not eliciting from Detective Wells that Troy Wilson, in contradiction of both his motions and trial testimony, told him that the shooter on August 24 and August 26, 2007 was the same person.

2. [T]rial counsel was ineffective for not requesting a limiting instruction to the effect that testimony concerning his involvement in the uncharged August 26, 2007 shooting was only to be considered as to Troy Wilson's ability to identify [Coates], as opposed to being considered as substantive evidence of [Coates's] guilt.

3. [T]rial counsel was ineffective for not timely disclosing to the State her intent to call a witness who would have testified that [Coates's] vehicle, contrary to the testimony of Troy Wilson, was actually green in color, not black, on August 24 and August 26, 2007, and, regardless, was actually in for repairs on these dates to begin with.

4. [T]rial counsel was ineffective for not eliciting the fact that another individual, to wit, Marcus Mackall, was identified as a person of interest in the shooting of James Hammond.

---

[3] The initial post-conviction petition was a self-represented petition which was later supplemented by a post-conviction petition filed by the Public Defender's Collateral Review Division. Both petitions were withdrawn in favor of a second supplemental petition for post-conviction relief filed by private counsel on Coates's behalf. July 27, 2012 Tr. 3–4, Resp. Ex. 11 (in court file); *see also* Second Supp. Pet. for Post-Conviction Relief, Resp. Ex. 10 (in court file).

5

> 5. [Coates] was denied a fair trial as a result of the errors of his trial counsel . . . as well as a result of the cumulative errors of his counsel.

*Id.* at 6–7.

The post-conviction hearing was held on July 27, 2012, in the Circuit Court for Baltimore City with Judge Barry G. Williams presiding. July 27, 2012 Tr., Resp. Ex. 11 (in court file). In support of Coates's claims for relief, post-conviction counsel called as witnesses: Catherine Flynn, who was Coates's trial counsel; Damien Tapp, the defense witness from the auto body shop who was not permitted to testify at trial; and Coates himself. *Id.* In a written decision dated August 2, 2012, the post-conviction court denied relief. Aug. 2, 2012 Mem. & Order, Resp. Ex. 12 (in court file). Coates's Application for Leave to Appeal filed with the Maryland Court of Special Appeals was denied by per curiam opinion on April 25, 2013. Resp. Exs. 13, 14 (in court file). Coates did not seek further appellate review.

### Claims Raised in this Court

In his Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, Coates raises the same five claims raised in his post-conviction petition, set forth above. Pet. 3–4.

### Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 134 S. Ct. 1697, 1702 (2014) (stating that "'state prisoner must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The Antiterrorism and Effective Death Penalty Act (AEDPA) erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. Under the "unreasonable application" analysis under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Harrington*, 562 U.S. at 102. A federal court reviewing a habeas petition will not lightly conclude that a State's criminal justice system has experienced the

"extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.* (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 599 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

**Analysis**

All of Coates's claims hinge on the asserted ineffective assistance of trial counsel. When a petitioner alleges ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the court to

8

consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). This presumption is so strong that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered "fundamentally unfair" by counsel's affirmative omissions or errors. *Id.* at 696; *see Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring).

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to

show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

In his first claim, Coates asserts that trial counsel was ineffective when she failed to elicit testimony from Detective Wells at trial that the State's key witness, Troy Wilson, had told Wells that the shooter in both incidents was the same man.[4] *See* Pet. 4–6, *see also* Nov. 13, 2008 Tr. 27–28, Resp. Ex. 2 (in court file). At the pre-trial motions hearing and at trial, Wilson identified Coates as the shooter on August 24, but as the driver of the vehicle on August 26. According to Wilson's testimony, another man, who was a passenger in the vehicle on August 26, was the shooter that day. Pet. 10–12. Coates maintains that trial counsel should have brought the inconsistency between Wilson's statement to Wells and his trial testimony to the jury's attention in her cross-examination of Wells.

The post-conviction court declined to find counsel's performance deficient in this regard because the testimony sought to be elicited from Wells would have been hearsay under Maryland Rule 5-802 and post-conviction counsel offered no basis upon which the hearsay testimony could have been admitted. Aug. 2, 2012 Mem. & Order 6–7. The court also observed that even if the testimony could have been elicited from Wells, that testimony could have been detrimental to Coates's defense, as the jury would have heard testimony that Coates was the shooter in both incidents. *Id.* at 7.

---

[4] Wells had testified at a pre-trial motions hearing that on September 24, 2007, Wilson selected Coates's picture as being the shooter in both incidents. *See* July 27, 2012 Tr. 27–30.

Wells's testimony about Wilson's earlier statements only would have been hearsay if offered for their truth. *See* Md. R. 5-801 ("'Hearsay' is a statement . . . offered in evidence to prove the truth of the matter asserted."). Rather, they were relevant for purposes of impeachment and admissible to show that Wilson's trial testimony was inconsistent with his earlier statements, regardless which version was the truth. *See* Md. R. 5-613(b).

Nonetheless, it is true that the testimony could have been detrimental to the defense, as it identified Coates as the shooter in two incidents, instead of only one. Moreover, there *was* testimony at trial that Wilson identified Coates as the shooter on August 26: Wilson testified that he identified Coates's picture in a photo array and wrote on the back of the form: "This is the guy I seen get out of the truck doing the shooting that night. And this is the same guy firing the gun . . . the same guy driving the same Navigator Sunday morning [August 26] *when he shot my wife's truck up*." Dec. 8, 2008 Tr. 153–54 (emphasis added). Thus, Wilson testified that, in response to the photo array, he identified Coates as the "same guy" who, on August 24, "d[id] the shooting that night" and then, on August 26, "shot [his] wife's truck up." *Id.* And, he also testified to the contrary that, on August 26, Coates drove the Navigator while the passenger shot his truck. *Id.* at 150–52. Certainly, counsel's failure to elicit Wells's testimony about Wilson's inconsistent identifications, when Wilson's own testimony showed the inconsistency in his identifications, would not prejudice the defense or alter the results. *See Strickland*, 466 U.S. at 687. The post-conviction court's conclusion that counsel was not ineffective in failing to elicit this testimony is without constitutional error, and Coates has failed to satisfy the high standard for federal habeas relief on this ground.

Coates next asserts that trial counsel was ineffective for failing to ask for a limiting jury instruction so that the jury would only consider the testimony regarding the second shooting for

purposes of weighing Wilson's ability to identify Coates, but not his guilt. Pet. 5–6. Trial counsel testified at the post-conviction hearing that she had a reason for not asking for that particular jury instruction, but could not recall what the reason might have been. July 27, 2012 Tr. 23–24. During her testimony, counsel stated that she had been practicing criminal defense law for approximately seventeen years at the time of Coates's trial and that she was aware of the existence of the pattern jury instruction which would have limited the jury's consideration on the testimony about the second shooting. *Id.* at 21–22, 41, 114–15. Indeed, the trial judge asked defense counsel if she wanted the limiting instruction and she indicated she did not want to request it. *See* Dec. 10, 2008 Tr. 20.

The post-conviction court found that, in light of counsel's extensive experience, the decision by trial counsel to forego the limiting instruction was a legitimate trial strategy, even though she could not explain what that strategy had been. Aug. 2, 2012 Mem. & Order 7–8. Significantly, the post-conviction court already had concluded that further emphasis on Coates's possible involvement in the second shooting could have been detrimental to the defense. *See* Aug. 2, 2012 Mem. & Order 7. And, Coates did not "overcome the presumption that, under the circumstances, [counsel's decision not to request the instruction] 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Under these circumstances, the post-conviction court's conclusion that it was a legitimate trial strategy not to request an instruction that would highlight the second shooting is not "'so lacking in justification that [it] was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The post-conviction court's conclusion,

viewed under the deference required by both *Strickland* and AEDPA, is without error and habeas relief must be denied on the ground asserted.

Coates next claims that trial counsel was ineffective when she failed to provide proper notice to the State of her intention to call Damien Tapp as a witness to establish that Coates's Navigator was a different color (green) at the time of the shooting. Pet. 6–7. Coates alleges that Tapp's testimony that Coates's Navigator was not black at the time of the shooting would have called into question the reliability of Wilson's identification of Coates. *Id.* at 6. Additionally, he states that had Tapp been allowed to testify, his testimony also could have shed light on the question of whether Coates was even in possession of the Navigator on the dates at issue because the vehicle was in the shop for body repair work around the date of the shooting. *Id.* Tapp was never permitted to testify, however, because the trial court granted the State's motion to exclude it based on defense counsel's failure to follow the requirements of Maryland Rule 4-263, requiring notice of potential witnesses. *Id.* at 7.

With regard to the defense counsel's failure to provide adequate notice to the State's Attorney that she intended to call Damien Tapp as a witness, counsel testified at the post-conviction hearing that the rule governing defense attorneys' obligation in discovery changed two months prior to trial.[5] July 27, 2012 Tr. 30–31. In addition, counsel testified at the post-conviction hearing that she simply did not stay abreast of the rule change as it affected this case. *Id.* at 34–35. Thus, the post-conviction court found that counsel's performance was deficient under the first prong of *Strickland*. Aug. 2, 2012 Mem. & Order 8–9. The post-conviction court then examined whether counsel's deficient performance prejudiced Coates such that the outcome of the trial would have been different and concluded it did not prejudice Coates. *Id.* at 9–11.

---

[5] Effective July 1, 2008, defense counsel was required to disclose to the State the name and address of any witness, not just alibi witnesses, and to provide copies of any written statements, thirty days prior to trial. *See* Aug. 2, 2012 Mem. & Order 9 n.2.

The post-conviction court first noted that, when Tapp was called as a witness at trial, defense counsel proffered that he would testify only as to the color of the Navigator at the time of the shooting and would not be providing alibi testimony. Aug. 2, 2012 Mem. & Order 10. At the post-conviction hearing, counsel testified that Tapp was initially considered as a possible alibi witness because there was a suggestion that Coates was not in possession of the Navigator at the time of the shooting. *Id.* She explained, however, that this tactic was abandoned after further investigation. *Id.*

The post-conviction court further noted that Tapp's post-conviction hearing testimony established he was uncertain he would have been able to provide evidence that the Navigator was in his shop at the time of the shooting, as the recordkeeping for his business was disorganized at that time. *Id.* Tapp explained that it took approximately three days to do an estimate on a car in need of body repairs, such as Coates's Navigator required. *Id.* After the estimate was completed, his practice was to require at least a partial payment of the fee before the work commenced. *Id.* When the customer paid for the work, a record was generated indicating the amount paid. *Id.* In Coates's case, the record indicating the full fee for the repairs was paid on August 29, 2007, was the only document offered. Tapp testified that he at the time of trial, December, 2008, he was unsure whether he would have had additional records to show the actual date the Navigator was received in his shop.

The post-conviction court concluded that Tapp's testimony, had it been allowed, was at best equivocal and also in contradiction to the testimony of Tyra Richmond. *Id.* at 11. Richmond had testified that pictures of Coates's Navigator, which was black at the time the pictures were taken, accurately depicted what the Navigator looked like in August of 2007. *Id.* The post-conviction court found that there was no evidence suggesting a reasonable probability that the

outcome of the trial would have been different since Wilson identified Coates by his picture, not by his car. *Id.* The post-conviction court's conclusion, which relies in part on the determination of Tapp's credibility as a witness, is without constitutional error and does not state a basis for federal habeas relief.

Coates alleges that there was another suspect identified by a witness who was not called to testify, but who had spoken to police. Pet. 7. The existence of the other suspect was disclosed to the defense during the discovery process. An individual named Mark Mitchell told police they should look at a subject in connection with the shooting of James Hammond who lived close to the scene of the shooting, drove a black Cadillac Escalade, which is similar to a Lincoln Navigator, and matched the general description of the shooter. *Id.* The name of the other suspect was Marcus Mackall. Coates asserts that when Mitchell was shown a picture of Mackall, he informed police that Mackall looked like the person who might have been involved in the shooting of James Hammond. *Id.*

The post-conviction court rejected this claim on the basis that the failure to elicit testimony that someone else was a person of interest is not ineffective assistance of counsel. Aug. 2, 2012 Mem. & Order 12. The court further noted that Wilson never identified anyone other than Coates as the shooter and denied post-conviction relief on this ground. *Id.* The post-conviction court's decision does not constitute an unreasonable application of the law and habeas relief must be denied on the ground asserted.

In light of the failure to establish that defense counsel was deficient in her performance and that her performance prejudiced Coates, the post-conviction court rejected the cumulative error ground for post-conviction relief and observed that Coates received a fair trial. Aug. 2, 2012 Mem. & Order 12. This court finds no error in the post-conviction court's conclusion that

Coates's trial was fair and without constitutional error. Accordingly, the Petition for Writ of Habeas Corpus must be denied.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C. § 2253(c)(2).

A separate Order follows.

_03/14/16_
Date

_____
Paul W. Grimm
United States District Judge